1  **G. WARREN BLEEKER, CA Bar No. 210834**
   wbleeker@lewisroca.com
2  **LEWIS ROCA ROTHGERBER CHRISTIE LLP**
   **655 N. Central Avenue, Suite 2300**
3  **Glendale, CA 91203-1445**
   **Telephone: (626) 795-9900**
4  **Facsimile: (626) 577-8800**

5  Attorneys for Defendant
   TEST-RITE PRODUCTS CORP.

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  Q INDUSTRIES, INC., a Nevada            Case No. 2:22-cv-03791- AB (PVCx)
    Corporation,
12                                          **DEFENDANT TEST-RITE**
              Plaintiff,                     **PRODUCTS CORP.'S OPPOSITION**
13                                           **TO PLAINTIFF'S MOTION FOR**
         vs.                                 **LEAVE TO FILE A THIRD**
14                                           **AMENDED COMPLAINT AND**
    O'REILLY AUTOMOTIVE, INC.,               **OPPOSITION TO AUTHORIZING**
15  a Missouri Corporation; O'REILLY         **SERVICE OF PROCESS**
    AUTO ENTERPRISES LLC,
16  a Delaware Limited Liability
    Company; O'REILLY                        **Date:  July 7, 2023**
17  AUTOMOTIVE STORES, INC.,                 **Time: 10:00 a.m.**
    a Missouri Corporation; OZARK            **Courtroom: 7B**
18  PURCHASING, LLC, a Missouri
    Limited Liability Company;
19  TEST-RITE PRODUCTS CORP.,                **Hon. André J. Birotte Jr.**
    a California Corporation; and
20  DOES 1-10, inclusive,

21            Defendants.

22

23

24

25

26

27

28

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND ..............................................................2

III.  PLAINTIFF'S ATTEMPT TO ADD A NEW PARTY AT THIS LATE DATE IS PROCEDURALLY IMPROPER. .........................9

IV.   PLAINTIFF'S ATTEMPT TO ADD NEW DEFENDANT TRIC IS UNTIMELY ...................................................................................10

V.    PLAINTIFF'S ASSERTED CLAIM AGAINST TRIC IS FUTILE AS PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT FOR THIS COURT TO PROPERLY ASSERT PERSONAL JURISDICTION OVER ANY OF THE NEWLY NAMED DEFENDANTS ....................................................................................11

VI.   PLAINTIFF'S REQUEST FOR ALTERNATIVE SERVICE IS PREMATURE AND NOT SUPPORTED BY THE LAW..............16

VII.  CONCLUSION .................................................................................19

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AMA Multimedia, LLC v. Wanat,*
    970 F.3d 1201 (9th Cir. 2020).................................................................13, 15

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
    874 F.3d 1064 (9th Cir. 2017).......................................................................12

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
    489 U.S. 141 (1989).......................................................................................14

*Chodos v. W. Publ'g Co.,*
    292 F.3d 992 (9th Cir. 2002).........................................................................10

*Dedge v. Kendrick,*
    849 F.2d 1398 (11th Cir. 1988).......................................................................9

*Fujitsu Ltd. v. Belkin Int'l, Inc.,*
    782 F. Supp.2d 868 (N.D. Cal. 2011)..................................................16, 17, 18

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945).......................................................................................12

*Johnson v. Mammoth Recreations, Inc.,*
    975 F.2d 604 (9th Cir. 1992).........................................................................10

*Moore v. Kayport Package Exp., Inc.,*
    885 F.2d 531 (9th Cir. 1989).........................................................................10

*Network–1 Sec. Solutions, Inc. v. D–Link Corp. et al.,*
    No. 6:05–CV–291–LED, Dkt. No. 55 (E.D.Tex. Feb. 8, 2006).....................17

*Panavision Int'l, L.P. v. Toeppen,*
    141 F.3d 1316 (9th Cir. 1998).......................................................................12

*Picot v. Weston,*
    780 F.3d 1206 (9th Cir. 2015).......................................................................12

*Ex parte Procter & Gamble Co.,*
    96 U.S.P.Q. 272 (Chief Examiner 1953)..........................................................3

*Rio Properties, Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ........................................................17

*Simpson v. Lear Astronics Corp.*,
  77 F.3d 1170 (9th Cir. 1996) ...........................................................9

*Societe de Developments et D'Innovations Des Marches Agricoles et
  Alimentaires, et al v. Int'l Yogurt Co.*,
  662 F. Supp. 839 (D. Ore. 1987) .......................................................2

*Solomon v. North American Life & Cas. Ins. Co.*,
  151 F.3d 1132 (9th Cir. 1998) ........................................................11

*Sutton v. Williamsburg Winery, Ltd.*,
  No. 2:12-CV-00333-GEB, 2013 WL 5348127 (E.D. Cal. Sept.
  23, 2013), *aff'd*, 616 F. App'x 351 (9th Cir. 2015) ...........................2

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
  532 U.S. 23 (2001) ........................................................................14

*U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*,
  768 F.2d 1099 (9th Cir. 1985) ...........................................................9

*Walden v. Fiore*,
  571 U.S. 277 (2014) ......................................................................12

**Statutes**

15 U.S.C. § 1127 ................................................................................2

R.O.C. Law Article 5 ........................................................................16

**Other Authorities**

Fed. R. Civ. P. 16 .............................................................................10

Fed. R. Civ. P. 16(b)(4) ......................................................................9

Rule 4(d) ..........................................................................................17

Rule 4(f)(3) .......................................................................................17

Rule 4(k)(2) ......................................................................................13

Rule 7-3 ........................................................................................7, 8

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

Rule 33 ........................................................................................................7

Rule 34 ........................................................................................................7

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

## I.   **<u>INTRODUCTION</u>**

Plaintiff's belated request to file a Third Amended Complaint, seeking to add Taiwanese publicly-traded company Test Rite International Co., Ltd. ("TRIC"), is procedurally improper, untimely, and futile. The deadline for Plaintiff to amend its Complaint expired on January 3, 2023.  Dkt. No. 37.  Plaintiff's own delay and lack of diligence is the sole cause for Plaintiff's failure to timely seek amendment.

Plaintiff also fails to allege facts sufficient for this Court to properly exercise personal jurisdiction over TRIC. TRIC does not manufacture, produce, or design any products.  Current Defendant Test-Rite Products Corp. (TRPC) is an indirect subsidiary of TRIC and is a separate legal entity with financials audited by independent third-party certified accountants. TRPC is the importer of record for the portable air compressors at issue in the case.  TRPC takes possession of these products F.O.B. in Shanghai and TRPC imports these products into the United States and distributes them to the O'Reilly companies.  Declaration of Kelly Ho (Kelly Ho Decl.) ¶¶ 2-6.

Plaintiff fails to allege any facts, and no proper basis actually exists, to support the claim that TRIC, in sourcing an O'Reilly private label air compressor from China, has engaged in intentional and unlawful actions "expressly aimed" at California or the United States, or that California or the United States was a "focal point" of the foreign supplier's actions and the purported harm suffered.  TRIC had nothing to do with the alleged unlawful activity—the decision to add the words "special ops" (in small font) on the portable air compressors. The products are O'Reilly's own private label products, O'Reilly instructed third party Cooper (not TRIC or TRPC) that he needed to create a "special ops" feel and to include the words "special ops" on the products, and O'Reilly admits that Cooper simply "did what *we asked him to do*." (Bleeker Decl., Exhs. 8, 13, 14) (emphasis in original).

Plaintiff also falsely asserts in its motion, with no citation to the record, that TRPC "uses" TRIC "to declare most of its profits offshore" and engage in a

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

"corporate shell game" by "hiding profits overseas." This is pure fiction, unsupported by any citation to the record, and a thinly-veiled xenophobic attack on TRIC, which is in fact a well-established and reputable supplier for global retailers and has won numerous awards in Supplier of the Year and in spearheading sustainability. TRIC has experience sourcing products in Asia. It searches for and finds the factories that manufacture products and serves as the communication point with the factories.  Kelly Ho. Decl. at ¶ 6.

Finally, Plaintiff's demand that it be allowed to effectuate service on a Taiwanese company by simply sending an email to "Defendants' counsel" in this case is unsupported by any legal authority. Sending an email to "Defendants' counsel" is not a permissible substitute for personally serving a publicly traded Taiwanese company, not currently a party to any related U.S. litigation.  Plaintiff's request is unsupported by any legal authority and, if granted, would undoubtedly violate the service requirements under Taiwanese law.

## II.   FACTUAL BACKGROUND

From 2005 to 2008, Plaintiff appears to have used the term "Special Ops" on an air compressor, but then ceased selling this product in 2008, over 15 years ago, abandoning any rights it had. [Dkt. No. 104 at pp. 8-9 (5th Aff. Defense)].[1]

---

[1] A trademark is "abandoned" if "its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127.  A showing of non-use for three consecutive years "eliminates the [defendant's] burden to establish the intent element of abandonment as an initial part of [its] case,' and creates a rebuttable presumption that the [plaintiff] has abandoned the mark without intent to resume or continue use." *Sutton v. Williamsburg Winery, Ltd.*, No. 2:12-CV-00333-GEB, 2013 WL 5348127, at *3 (E.D. Cal. Sept. 23, 2013), *aff'd*, 616 F. App'x 351 (9th Cir. 2015). alternations in original. Here, Plaintiff abandoned the SPECIAL OPS mark in 2008, at least 15 years ago, and moved on to the AIR ARMOR mark.  "Once a mark is abandoned, 'a mark falls into the public domain and is free for all to use.'" *Id at *2*; (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 17:1, (4th ed. 2013)).   Once a period of nonuse results in abandonment, subsequent use cannot cure that abandonment. *Societe de*

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

In 2013, years after Plaintiff ceased selling air compressor products, its original federal registration was properly canceled by the USPTO for Plaintiff's failure to show use in commerce. [Bleeker Decl., Exh. 5].[2]

Much more recently, Plaintiff apparently began selling air compressors again, but under the mark "AIR ARMOR" and Plaintiff obtained trademark registrations for AIR ARMOR. [*Id.,* Exh. 6] In very small lettering, barely noticeable to a consumer, Plaintiff included the words "SPECIAL OPS" on its AIR ARMOR-branded product, but those words were relegated to tiny font on the packaging, and at the very bottom on the back of the product, also in very small font (see red arrows below).

 

Plaintiff's use of SPECIAL OPS in this manner certainly is not a trademark use. *Ex parte Procter & Gamble Co.*, 96 U.S.P.Q. 272 at *1 (Chief Examiner 1953)

---

*Developments et D'Innovations Des Marches Agricoles et Alimentaires, et al v. Int'l Yogurt Co.*, 662 F. Supp. 839, 850 (D. Ore. 1987) (upholding competitor's use and cancelling plaintiff's mark where plaintiff failed to use mark for over four years before resuming use, during which time a competitor began using a similar mark); *see also* McCarthy § 17:3.

[2] Also in 2013, Plaintiff's President falsely attested to the USPTO that Plaintiff was using SPECIAL OPS in commerce (it was not), and fraudulently obtained a new registration, which is asserted in this case. *See* Dkt. No. 104 at pp. 10-11 (Seventh Affirmative Defense of Fraud and seeking cancellation of the fraudulently obtained registration).

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

121555893.3

("IT FLOATS" on Ivory soap labels does not function as a trademark because it appeared "at the bottom of the label in very small type and at the end of eight lines of printed matter."). After Defendants first pointed this out, Plaintiff, in an apparent attempt to misrepresent how actual consumers would encounter these words in the marketplace, has now resorted to comically magnifying the size of the "special ops" graphics in their briefs (and proposed Third Amended Complaint—*see* Dkt. No. 138-1 at the end of ¶ 22) to artificially create the appearance that the term is a prominent source identifier when, in the marketplace, the consumer likely never sees these words, which are inexplicably hidden in small font on the ***back*** of Plaintiff's product.

A few years ago, Plaintiff began supplying its AIR ARMOR branded "ammo can" air compressor products to O'Reilly.

In early 2020, however, Plaintiff apparently ran into serious financial issues and abruptly stopped supplying O'Reilly. O'Reilly turned to its other suppliers to inquire if they could supply private-label air compressor products to O'Reilly under O'Reilly's well-known "POWER TORQUE" brand. Ultimately, O'Reilly chose Defendant TRPC to supply the new O'Reilly private-label air compressor products. TRPC engaged a separate company, Cooper's Artworks, Inc. ("Cooper") to work directly with O'Reilly on designing the artwork for the packaging and outer label for the private label air compressor products, including the product at issue, a private-label air compressor product that O'Reilly asked TRPC to supply—the "ammo can" air compressor that is sold in a replica ammunition box.

During the artwork design process, O'Reilly worked directly with third party Cooper on the design for the packaging and wrap for the ammo-can style air compressor product. In June of 2020, Jeff Alexander, a manager at O'Reilly, requested that Cooper create a military look and feel, including the use of the terms: "Military-Grade" and "Special Ops" on this private label product for O'Reilly. [Bleeker Decl., Exhs. 7-8] Third party Cooper testified that he

-4-

1  understood O'Reilly's instruction was "requiring" that Cooper use these terms, so

2  Cooper included these terms on the packaging "[e]xactly as it's shown" in

3  O'Reilly's email to Cooper. [*Id.* Exh. 7 at 147:4-148:7] Cooper confirmed that

4  TRPC **had no involvement** in approving the graphics that included the term

5  "Special Ops." [*Id.* at 108:10-20, 109:7-9]

6      Plaintiff was aware of the sale of the accused product as early as February

7  2021, but took no action for over a year.  Dkt. No. 112-1 at ¶ 26.  Plaintiff sent no

8  cease and desist letters. Plaintiff eventually filed this lawsuit over a year ago, on

9  June 2, 2022.  Dkt. No. 1.  Plaintiff then learned of the existence of Defendant

10  TRPC and served a third-party subpoena on TRPC on October 31, 2022, when

11  TRPC was not yet a party to the case.

12      While the scope of the subpoena is very broad, counsel for Plaintiff

13  voluntarily agreed to narrow the scope of the subpoena considerably, and TRPC

14  has timely provided all the information requested by Plaintiff in response to the

15  subpoena. For example, at Plaintiff's request, on December 22, 2022, TRPC

16  voluntarily produced its sales and revenue information for the accused product and

17  also voluntarily identified that third party Cooper's Artworks, Inc. was responsible

18  for the graphic design of the Accused Product. [Bleeker Decl. ¶ 7; Exh. 9]

19      The parties met and conferred on numerous occasions between November

20  2022 and January 2023 and Plaintiff agreed to narrow the scope of the requests to:

21  (1) documents which would verify O'Reilly's sales/inventory/cost numbers; and

22  (2) emails between Tony Kania, Cory Blackburn, David Wilbanks, and Jerry

23  Cooper in the 2020 timeframe relating to the design of the accused product as it

24  pertains to the words SPECIAL OPS. [*Id.* at ¶ 8; Exh. 10] These individuals were

25  signatories to the Addendum Supplier Agreement between TRPC and O'Reilly for

26  the accused product. On January 27, 2023, again at Plaintiff's request, TRPC

27  produced its cost information and identified the manufacturer and importer of the

28  accused products.  [*Id.* ¶ 9; Exh. 11] On February 14, 2023, again per the parties'

-5-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

1   agreement, TRPC produced the documents it had agreed to produce and also

2   identified the manufacturer, at Plaintiff's request. [*Id.* ¶ 9].

3   Thus, as of the January 3, 2023 deadline to add parties, Plaintiff failed to

4   seek out the distributor information from TRPC and apparently did not attempt to

5   obtain this basic, public information, from any other source. Instead, the

6   information Plaintiff requested be provided at that time did not include documents

7   sufficient to identify any supplier.

8   Plaintiff has known that TRPC was a supplier of the accused product since

9   at least September or October 2022, but TRPC was not named as a party to the case

10  until March 2023. [Dkt. No. 92]  Even though Plaintiff and TRPC had previously

11  agreed to narrow the scope of the information to be produced, and TRPC provided

12  all the agreed information, on March 30, 2023, after a failed mediation, Plaintiff

13  apparently decided to expand the scope of the information it sought and emailed a

14  letter claiming numerous "deficiencies" in TRPC's discovery responses to the third

15  party subpoena.

16  Following Plaintiff's March 30 demand for additional information, the

17  parties engaged in further meet and confer efforts and TRPC agreed to provide the

18  additional information requested, search the three relevant custodians, and perform

19  word searches based on the search terms that Plaintiff demanded be searched.

20  [Bleeker Decl., ¶ 2; Exhs. 1-3]   TRPC, to date, has produced over 15,000 pages of

21  responsive information including revenue and cost information, the identity of the

22  foreign supplier (TRIC) and manufacturer and importer of the product at issue, the

23  relevant agreements, the importation documents, cost information throughout the

24  supply chain, and the circumstances as to how the words "special ops" were

25  requested to be used on the air compressor product. [Bleeker Decl., ¶ 2; Exhs. 1-3.]

26  During the March and April 2023 meet and confer efforts, Plaintiff now

27  asked for the importation documents and the identity of the supplier.  TRPC agreed

28  and it searched, reviewed, and processed thousands of documents, TRPC timely

121555893.3

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

produced the responsive documents on May 10 and 11, including the identity of TRIC. At no point has TRPC "concealed" or "hidden" information as Plaintiff falsely asserts in its motion. Again, throughout the discovery process, TRPC has consistently provided all the requested information in response to Plaintiff's ever-changing demands for such information.  Plaintiff's accusation of "concealing" information is baseless.

Despite TRPC being added as a party several months ago, Plaintiff never served any document requests on TRPC pursuant to Rule 34 or any interrogatories on TRPC pursuant to Rule 33.  [Bleeker Decl., ¶ 11]  Plaintiff's assertion in its motion that TRPC's counsel "refused to identify" the supplier is simply not true. When Plaintiff, relying on its third party subpoena, demanded that TRPC produce documents to identify the supplier (well after the deadline for adding parties), TRPC searched for and produced those documents that identify the foreign supplier. Plaintiff's assertion that TRPC's counsel was "deceptive" when he truthfully volunteered during meet and confer discussions that the foreign supplier is not a subsidiary of TRPC, is also baseless.  Plaintiff's counsel repeatedly referred to the foreign supplier as a foreign subsidiary and counsel for TRPC explained that the foreign supplier was not a subsidiary of TRPC. [Bleeker Decl., ¶ 16].  Once TRPC was added as a party, Plaintiff's counsel misused the discovery meet and confer process to attempt to depose counsel for TRPC for fact information, which is not appropriate.  In response to these inquiries, TRPC agreed to provide, and did provide, responsive documents that supplied the information Plaintiff was requesting.

Plaintiff also falsely asserts in its moving papers that counsel for TRPC stated that Plaintiff would be "unable to serve" TRIC.  Dkt. No. 137 at p. 6. Counsel for TRPC never made such a statement.  [Bleeker Decl., ¶ 12].  In the context of the Rule 7-3 conference for a motion for leave to amend, TRPC's counsel told Plaintiff's counsel that it is TRPC's position that the Court has no basis

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

to assert personal jurisdiction over Taiwanese company TRIC, or its officers and directors who reside in Taiwan. *Id.* Counsel for TRPC made no comment whatsoever as to whether Plaintiff would be able or willing to use the proper means of service to effectuate service, should leave to add a new party be granted. *Id.* at ¶ 13.

Plaintiff baldly asserts in its moving papers (but not in its proposed Third Amended Complaint) that TRPC "uses" TRIC "to declare most of its profits offshore" and engage in a "corporate shell game" by "hiding profits overseas." TRIC is a well-established and reputable supplier for global retailers and has won numerous awards in Supplier of the Year and in spearheading sustainability. TRIC has experience sourcing products in Asia. It searches for and finds the factories that manufacture products and serves as the communication point with the factories. TRPC and TRIC are separate legal entities with financials audited by independent third-party certified accountants. Kelly Ho Decl., ¶¶ 2-6.

Plaintiff's assertion that the "Ho Family" owns all three companies has no basis in fact. TRPC is a California company that was established in the United States more than 27 years ago. It is owned by a separate company, Test-Rite International (U.S.) Co., Ltd. (TRIC-US). TRIC-US is owned by TRIC. Thus, Plaintiff's assertion that the "Ho Family" owns all three companies has no basis in fact. *Id.* at ¶ 2.

Also, there are no "hidden" profits. TRIC's sales, revenue, and profit information for the accused products has already been produced.  TRIC's profits for the portable air compressors at issue, as verified by the financial records, are insubstantial, but fully disclosed. *Id.* at ¶ 5; Exh. 1.

Nor has TRPC "suppressed," "concealed," or "hidden" documents regarding the existence or identity of TRIC. As explained above, in December 2022 and January 2023, Plaintiff voluntarily limited its subpoena to certain information, which TRPC provided.  Months after the deadline for adding parties had passed, in

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

1  March and April 2023, Plaintiff for the first time specifically demanded documents
2  that identify the foreign supplier, and TRPC searched for, and on May 10, TRPC
3  produced its responsive documents identifying the supplier.  (Plaintiff claims it did
4  not know the supplier until May 16, but the May 10 document production included
5  all of the invoices between TRPC and TRIC (clearly identifying TRIC), and the
6  import documents (also clearly identifying TRIC)).

7      Under the current Scheduling Order, fact discovery closes on June 30, 2023.
8  [Dkt. 142.]

9  **III.**   **PLAINTIFF'S ATTEMPT TO ADD A NEW PARTY AT THIS LATE**
10      **DATE IS PROCEDURALLY IMPROPER.**

11      Under the operative Scheduling Order, the last day to add parties was
12  January 3, 2023, almost six months before this motion will even be heard.  Dkt.
13  No. 37.  "Once such scheduling order is made and there is a deadline for amending
14  any pleadings, no post-deadline amendment of pleadings is permitted unless the
15  court *first modifies* the scheduling order to permit the amendment."  *See* Rutter
16  Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 8-F at ¶ 8:1469. *See*, e.g., *U.S.*
17  *Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir.
18  1985) (holding that a district court properly denied a motion for summary judgment
19  as untimely where it was filed after the applicable scheduling order deadline and
20  the movant "never requested a modification" of the scheduling order), superseded
21  by statute on other grounds as recognized in *Simpson v. Lear Astronics Corp.*, 77
22  F.3d 1170 (9th Cir. 1996); *Dedge v. Kendrick*, 849 F.2d 1398, 1398 (11th Cir.
23  1988) (holding that a district court properly denied a motion for summary judgment
24  as untimely where the motion was filed after the deadline set forth in the scheduling
25  order and the movant did not request a modification of the scheduling order). To
26  obtain such modification, "good cause" must be shown.  Fed. R. Civ. P. 16(b)(4).
27  Plaintiff's motion is procedurally improper and should be denied on the grounds
28  that Plaintiff failed to first seek to modify the Court's Scheduling Order.   The

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

-9-

deadline to add parties expired over five months ago and Plaintiff has not sought to modify that deadline, rendering its motion for leave to amend untimely and subject to immediate denial.

## IV.   PLAINTIFF'S ATTEMPT TO ADD NEW DEFENDANT TRIC IS UNTIMELY

Even if Plaintiff had timely sought to modify the scheduling order, a district court may modify the pretrial schedule only "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment). "In deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment. *Moore v. Kayport Package Exp., Inc*., 885 F.2d 531, 538 (9th Cir. 1989) (internal citations omitted).  In determining whether a party has set forth good cause, the court primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 608 (9th Cir. 1992). Further, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* at 609.

Here, Plaintiff was not diligent in seeking to learn the identity of TRIC. Import records identifying a foreign supplier are publicly available documents. *See* https://www.cbp.gov/trade/itrac-requests.  Separately, Plaintiff could have asked TRPC to provide this information prior to January 2023.  While Plaintiff did serve an overly broad subpoena in October 2022, Plaintiff then agreed to limit the scope of the subpoena and did not attempt to obtain the export documents prior to the January 3, 2023 deadline to amend. Plaintiff, therefore, was not diligent in identifying the foreign exporter prior to the original deadline for adding parties. Leave to amend should be denied where the purported "new" facts were available to the party prior to the amendment deadline. *Chodos v. W. Publ'g Co.*, 292 F.3d

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

121555893.3

992, 1003 (9th Cir. 2002) (district court's conclusion that the motion to amend was made after undue delay did not constitute an abuse of its discretion).

Instead, Plaintiff, prior to the January 3, 2023 deadline for adding parties, took no steps to seek to add the Taiwanese supplier to the case. At this point in the case, fact discovery is almost over. Six depositions, including three 30(b)(6) depositions, have now taken place and additional depositions are being scheduled. Any party added to the case in July or August would be substantially prejudiced. It is both unfair and prejudicial for these deponents, many of whom are third parties, to have to sit for a second deposition, and it would be equally unfair and prejudicial for a newly added party to be deprived of attending and participating in these key depositions, which have already occurred.

In addition, adding a new party to this case in July or August would require re-opening fact discovery, even if the Court were to extend discovery a second time. Motions to amend made "on the even of the discovery deadline" thus delaying proceedings, should be denied. *Solomon v. North American Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998). Here, discovery has been extended once already, and now closes on June 30. Dkt. No. 131. Even though the parties are seeking to extend the deadline again (Dkt. No. 141), if a new party is added in July or August, even that new deadline (if granted) would have to be extended a third time to allow TRIC to propound written discovery, take depositions, and have an opportunity to fully resolve any discovery disputes prior to the close of discovery. This would further delay the matter.

## V.   **PLAINTIFF'S ASSERTED CLAIM AGAINST TRIC IS FUTILE AS PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT FOR THIS COURT TO PROPERLY ASSERT PERSONAL JURISDICTION OVER ANY OF THE NEWLY NAMED DEFENDANTS**

Due process requires that a non-resident defendant have certain "minimum

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

121555893.3

1   contacts" with the forum state "such that the maintenance of the suit does not offend

2   traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

3   *Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The plaintiff

4   bears the burden of proving that there are minimum contacts. *Axiom Foods, Inc. v.*

5   *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). In a trademark case, the

6   plaintiff must show that (1) the defendant purposefully directed activities at the

7   forum, and (2) that its claim "arises out of or relates to the defendant's forum-

8   related activities." *Id.* (citation omitted); *see also, Panavision Int'l, L.P. v.*

9   *Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (purposeful direction test generally

10  applies in trademark cases, which are "akin to a tort case").

11          More specifically, in a trademark infringement case, one element of many

12  that Plaintiff must prove, is that the defendant's acts were "expressly aimed" at

13  California. Plaintiff must allege and show that California was a "focal point both

14  of [each defendant's actions] and of the harm suffered." *Axiom Foods,* 874 F.3d at

15  1071 (quoting *Walden v. Fiore*, 571 U.S. 277, 287, (2014)). The test is all or

16  nothing. If a plaintiff cannot establish this prong, specific jurisdiction cannot

17  attach. *See Picot v. Weston*, 780 F.3d 1206, 1214–15, 1215 n.4 (9th Cir. 2015).

18          Here, Plaintiff does not and cannot allege any factual basis for personal

19  jurisdiction against TRIC. Plaintiff alleges that "TRIC is located in Taiwan, and

20  TRIC purchased the Accused Product from a manufacturer and sold the Accused

21  Product to Test-Rite [Products Corp.]" Dkt. 138-1 at ¶ 11. This allegation is

22  plainly insufficient to establish the "expressly aimed" requirement. It is undisputed

23  that TRIC is a foreign company and does not sell the accused product in the United

24  States. TRPC purchased and took possession of the accused products overseas, and

25  TRPC imported the products into the United States and sold them to a Missouri

26  company, which then distributed the products throughout the United States. (Kelly

27  Ho Decl., ¶ 4.) There is no allegation, nor can there be, that TRIC itself made any

28  sales into the United States. There is no allegation, nor could Plaintiff plausibly

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

-12-

1   assert any allegation, that California was the focal point of **any actions taken by**
2   **TRIC,** let alone in connection with the accused product.  It is undisputed that TRIC
3   simply works with factories in China who manufacture the products, and serves as
4   the communication point with the factories. TRIC itself does not manufacture,
5   produce, or design products.  [Kelly Ho Decl., ¶ 3].

6   TRIC, moreover, had nothing to do with the alleged unlawful activity,
7   deciding to add the words "special ops" (in small font) on the portable air
8   compressors. The products are O'Reilly's own private label products, O'Reilly
9   instructed third party Cooper (not TRIC or TRPC) that he needed to create a
10   "special ops" feel and include the words "special ops" on the products, and
11   O'Reilly admits that Cooper simply "did what **we asked him to do**." (Bleeker
12   Decl., Exhs. 8, 13, 14) (emphasis in original).  Cooper testified that he understood
13   O'Reilly's instruction was "requiring" that Cooper use these terms, so Cooper
14   included these terms on the packaging "[e]xactly as it's shown" in O'Reilly's email
15   to Cooper. [*Id.* Exh. 7 at 147:4-148:7] Cooper confirmed that TRPC **had no**
16   **involvement** in approving the graphics that included the term "Special Ops." [*Id.*
17   at 108:10-20, 109:7-9]. Cooper has no relation to TRIC. Because this prong cannot
18   be met, Plaintiff fails to establish personal jurisdiction against TRIC.

19   Even if Plaintiff attempts to rely on Rule 4(k)(2), Plaintiff still must plausibly
20   allege that TRIC "expressly aimed" conduct towards the United States.  *AMA*
21   *Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208-09 (9th Cir. 2020).  Again, TRIC
22   itself does not manufacture, produce, or design products.  There is no allegation
23   that TRIC sells any product direct to consumers. TRIC's actions with respect to the
24   accused products, are mainly directed towards communicating with the Chinese
25   manufacturers. There is no plausible allegation that TRIC was involved in any
26   decision to use the words "special ops" on the accused products.

27   The only intellectual property rights asserted against TRIC in the proposed
28   Third Amended Complaint relate solely to the claimed rights in "special ops."  Dkt.

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

-13-

No. 138-1 (causes of action 1, 2, 6, 7 asserted against TRIC are all limited to "special ops" claims)[3].  Plaintiff makes no claim that TRIC was involved in the term "special ops" being placed on the accused product.  Instead, Plaintiff attempts to improperly conflate use of "special ops" with "copying" its air compressor products in general. *See* Dkt. No. 138-1 at ¶ 28.  Plaintiff, however, asserts no intellectual property rights to its air compressor products in general.  Even if Plaintiff's allegation of "copying" is accepted as true, as McCarthy points out:

> [E]verything that is not protected by an intellectual property right is free to copy. Copying is an essential part of the whole fabric of an economic system of free competition. The act of "copying" such things as the concept, design and packaging of an innovator, far from being intrinsically improper, is essential and should be lauded and encouraged, not condemned. There is absolutely nothing legally or morally reprehensible about exact copying of things in the public domain.

4 McCarthy on Trademarks and Unfair Competition § 23:122 (5th ed.).

Moreover, the U.S. Supreme Court holds that copying is an essential element of free competition:

> [I]n many instances there is no prohibition against copying goods and products. In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying …. [C]opying is not always discouraged or disfavored by the laws which preserve our competitive economy …. Allowing competitors to copy will have salutary effects in many instances.

*TrafFix Devices, Inc. v. Marketing Displays, Inc*., 532 U.S. 23, 29 (2001); *Bonito*

---

[3] Plaintiff seeks to assert additional claims against O'Reilly only based on the use of a "dangler" apparently provided to O'Reilly by Q Industries.  These "dangler" claims have nothing to do with TRPC or TRIC and the dangler-related claims are not directed to TRPC or TRIC.

-14-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

*Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 164 (1989) ("Where an item in general circulation is unprotected by patent, '[r]eproduction of a functional attribute is legitimate competitive activity.'").

The "expressly aimed" requirement refers to "tortious conduct" or intentional and unlawful acts expressly aimed toward California or the United States. *AMA Mulitmedia*, 970 F.3d at 1208. Plaintiff's generic allegations that O'Reilly asked <u>TRPC</u> to "copy" or create a "substantially indistinguishable product," even if accepted by the Court for the purposes of this motion, are irrelevant in this case, and certainly cannot be used to establish personal jurisdiction over TRIC.  Plaintiff fails to allege ownership of any legal right to prevent any company from purchasing and "copying" any of their air compressor products generally. The only alleged intellectual property right asserted against TRIC is the purported "special ops" trademark and Plaintiff fails to allege any facts that TRIC had anything to do with the placement of those words on the accused products, let alone that TRIC was "expressly aiming" any actions towards California or the United States with respect to the term "special ops."  Allegedly communicating with a factory in China to "copy" an air compressor in the public domain is not unlawful and forms no proper basis for this Court to exert personal jurisdiction over TRIC.  Again, Plaintiff makes no allegation that Plaintiff owns or asserts any intellectual property rights against TRIC, other than its purported trademark rights for the term "special ops" (which is itself largely in question given that its original registration was cancelled by the USPTO for non-use).  In fact, Plaintiff admits that it was O'Reilly (from the U.S.) that asked TRPC (in the U.S.) to supply a specific private label product for O'Reilly.  Dkt. No. 138-1 at ¶ 28 (alleging it was O'Reilly who initiated the project, from the United States).  Thus, any purported "intentional act" was not committed by TRIC in simply sourcing products in China.  There is no allegation that TRIC had anything to do with the decision to use the words "special ops" on the accused products.

-15-

Plaintiff therefore, has not, and cannot allege facts sufficient for this Court to exercise personal jurisdiction over TRIC in this case.

## VI.   PLAINTIFF'S REQUEST FOR ALTERNATIVE SERVICE IS PREMATURE AND NOT SUPPORTED BY THE LAW

Plaintiff's request that this Court authorize Plaintiff to simply send an email to "Defendants' counsel" (Dkt. No. 137 at p. 19, line 5) in this case, as a proper service of a Taiwan publicly traded company, not otherwise involved in any other pending litigation in the United States, is highly inappropriate and unsupported by the law.

The currently-served Defendants are represented by the law firms of Shook, Hardy & Bacon, and Lewis Roca, respectively.  Plaintiff seeks to add a separate publicly traded Taiwanese company, TRIC, as a defendant. Plaintiff offers zero evidence that either law firm has ever represented or made an appearance on behalf of TRIC. Plaintiff cites to no legal authority to support Plaintiff's position that Plaintiff can unilaterally decide which law firm will represent a foreign entity and be forced to accept service on their behalf. No authority supports Plaintiff's unprecedented demand.

Courts in the United States have recognized that under Taiwanese law, specifically, Article 123 of the R.O.C. Code of Civil Procedures, that "service shall be effected motu proprio by the Clerk of the Court, except as where it is otherwise provided. . . . Article 5 of the R.O.C. Law Governing Extension of Assistance to Foreign Courts allows foreign parties to request, by letters rogatory, the assistance of the courts of Taiwan in serving civil litigation documents." *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp.2d 868, 874–75 (N.D. Cal. 2011). However, when "foreign parties make such a request, they must provide Chinese translations and verifications of the translations. . . . The courts of Taiwan then execute service of process in accordance with the R.O.C. Code of Civil Procedures." *Id.*

-16-

121555893.3

The plaintiff in *Fujitsu* sought alternate means of service relying on the same case law cited by Plaintiff in this case.  The court rejected the request for alternate service "in a manner that is not prescribed by [Taiwan's] laws."  *Id.*  at 880.

The Court in *Fujitsu* distinguished the *Rio Properties* case relied on heavily by Plaintiff here.  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002).  The Court in *Fujitsu* explained that in *Rio,* "the Ninth Circuit affirmed the district court's decision to order service on a foreign business through its attorney, U.S. affiliated courier, and e-mail address because that foreign business had shown itself to be 'an elusive international defendant, striving to evade service of process'" and Fujitsu did not present "any facts to suggest that [the *Rio* Defendants] D–Link Corp. and ZyXEL Corp. are evading service. Although D–Link Corp. and ZyXEL Corp. disagree with Fujitsu's method of service, they have not shown any unwillingness to accept service in conformity with Taiwanese law. Thus, the facts at issue in *Rio Properties* do not support Fujitsu's request for court ordered service here."  *Fujitsu*, 782 F.Supp.2d at 880.  Similarly, in this case, TRIC has not yet even been added as a party.  There is no evidence of evading service or unwillingness to accept service in conformity with Taiwanese law.  The facts here similarly do not support a request for court ordered service.

The *Fujitsu* Court also noted that in another case authorizing service, *Network–1 Sec. Solutions, Inc. v. D–Link Corp. et al.*, No. 6:05–CV–291–LED, Dkt. No. 55 (E.D.Tex. Feb. 8, 2006), "the court ordered service on D–Link Corp.'s counsel pursuant to Rule 4(f)(3) after D–Link Corp.'s counsel represented at oral argument that he would waive service under Rule 4(d)."  *Fujitsu*, 782 F.Supp.2d at 880.  The *Fujitsu* Court refused to order alternative service on outside counsel, where outside counsel "explicitly stated that he did not have authority from D–Link Corp. to waive service. Furthermore, in the *Network–1* case, D–Link Corp. filed a motion to consolidate before the Judicial Panel on Multidistrict Litigation. Accordingly, the facts in *Network–1* are distinguishable from those at issue here."

-17-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

*Id.* (internal citation omitted)

Similarly, in this case, neither Shook, Hardy & Bacon nor Lewis Roca has made any appearance for TRIC, nor have any of these attorneys agreed to waive service on TRIC's behalf.  Moreover, none of these outside counsel have indicated they represent any of these entities or made any representation about authority to accept service.

Third, the *Fujitsu* Court noted that in a prior case where alternate service was permitted, it was based in part on the fact that the Taiwanese defendant was "already . . . a defendant in the related MDL for several years" and [a]lso significant to the court's decision was the fact that the defendant Taiwanese corporation's U.S. counsel had been representing it for several years in the MDL lawsuits. These facts are distinguishable from those of the instant case." *Fujitsu*, 782 F.Supp.2d at 880. (internal citation omitted).

Similarly in this case, TRIC is not already a named defendant in any ongoing litigation, let alone related ongoing litigation in the United States.  Neither Shook, Hardy & Bacon nor Lewis Roca have been representing any of these entities in any other pending lawsuits in the United States. Plaintiff cites to no legal authority where any Court authorized service on outside U.S. counsel, where that outside counsel was not already currently representing the foreign entity in ongoing U.S. litigation.  These key distinguishing facts are all reasons to deny Plaintiff's request for alternate service in this case.  This Court has not yet decided whether to allow Plaintiff to add TRIC.  Plaintiff has not yet even attempted to serve TRIC through traditional means.  For all these reasons, Plaintiff's demand that the Court authorize service of a Taiwan company by emailing a private law firm in the United States that is not currently representing any of the parties in any pending lawsuits, and where such service does not comply with Taiwanese law, and where there is no evidence that any potential new defendant has evaded service, and no indication

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

that any potential new defendant will not agree to be served under Taiwan law, should be denied.

## VII.  **<u>CONCLUSION</u>**

For the reasons set forth herein, TRPC respectfully requests that Plaintiff's motion be denied.


Dated:  June 16, 2023                    Respectfully submitted,

LEWIS ROCA ROTHGERBER
CHRISTIE LLP

By   *<u>/s/G. Warren Bleeker</u>*
     G. Warren Bleeker

Attorneys for Defendant
TEST-RITE PRODUCTS CORP.

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

**LEWIS ROCA**

-19-

121555893.3