UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Q INDUSTRIES, INC. et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>O'REILLY AUTOMOTIVE, INC., et al.,<br><br>　　　　Defendants. | Case No. 2:22-cv-03791-HDV (PVCx)<br><br>**ORDER DENYING MOTION TO DISMISS [DKT. NO. 206]** |

## I. INTRODUCTION

Before the Court is Defendant Test-Rite International Co. Ltd.'s ("Test-Rite International") Motion to Dismiss Plaintiff's Third Amended Complaint for Lack of Personal Jurisdiction (the "Motion") [Dkt. No. 206]. For the reasons stated below, the Motion is denied. Jurisdiction is proper over Defendant Test-Rite International under Federal Rule of Civil Procedure 4(k)(2).

## II. BACKGROUND

The present action centers on the alleged infringement of Plaintiff Q Industries' trademarks. For many years, Plaintiff has sold an air compressor product (bearing its trademark) through Defendant O'Reilly's[1] online and retail stores. Third Amended Complaint ("TAC") ¶ 20 [Dkt. No. 192].

But the relationship soured. In April 2020, O'Reilly contracted with Test-Rite Products Corp ("Test-Rite Products") to create an air compressor with a similar appearance bearing a similar mark. TAC ¶ 26. According to the TAC, the infringing air compressor "bears a counterfeit mark identical, substantially indistinguishable and/or confusingly similar to the Special Ops® mark" included on Q Industries' air compressor. *Id.* ¶ 23.

Plaintiff sued O'Reilly and Test-Rite Products in June 2022, alleging various trademark claims on its air compressor (the "Accused Product"). On September 8, 2023, this Court granted Plaintiff's motion for leave to file a Third Amended Complaint [Dkt. No. 137] to include claims against Test-Rite International for trademark infringement, false designation of origin, and violation of California Unfair Business Practices Act [Dkt. No. 190]. The TAC alleges that "Test-Rite is owned and otherwise controlled by Test-Rite International Corporation Ltd., which was also involved in the design, purchase and sale of the Accused Product." TAC ¶ 28. Test-Rite International filed this Motion arguing that the Court lacks personal jurisdiction.

---

[1] Defendant "O'Reilly" refers collectively and generally to Defendants O'Reilly Automotive, Inc.; O'Reilly Auto Enterprises LLC; O'Reilly Automotive Stores, Inc.; and Ozark Purchasing, LLC.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden for establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Because the Motion is based on written materials rather than an evidentiary hearing, "[P]laintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). The Court may consider "pleadings and affidavits" in determining whether plaintiff has established a "prima facie showing of personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)

When considering a motion to dismiss for lack of personal jurisdiction, courts are not confined to the plaintiff's complaint and can consider evidence such as party declarations. *See*, *e.g.*, *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 949 (N.D. Cal. 2015) ("A trial court may rule on the issue of personal jurisdiction by 'relying on affidavits and discovery materials without holding an evidentiary hearing,' though 'dismissal is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction.'") (quoting *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986)). Although the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," it will "resolve factual disputes in the plaintiff's favor." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011 (citations omitted).

### IV. DISCUSSION

The essence of Defendant's Motion is that Test-Rite International does not have sufficient minimum contacts with California for this Court to exercise specific personal jurisdiction. Motion at 11–18. Specifically, Test-Rite International argues that it is an international company without offices in California, without bank accounts or other assets in California, and is without a registered agent either in the state or elsewhere in the United States. *See* Declaration of Agnes Shih ("Shi Decl.") at ¶¶ 5-8 [Dkt. No. 206-2]. Test-Rite International also avers that it does not manufacture or produce any products, does not advertise its "sourced products" to end consumers in the United States, and does not have a website where customers can make orders. *Id.* ¶¶ 11–12.

Q Industries does not address the concept of general jurisdiction in the traditional sense, but argues instead that jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2), which provides jurisdiction over international residents if they have sufficient contacts **with the United States as a whole**. "Rule 4(k)(2) was established in response to the Supreme Court's suggestion that the rules be extended to cover persons who do not reside in the United States, and have ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction." *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1040 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2563 (2023) (citation omitted). Under Rule 4(k)(2), a plaintiff must prove: (1) the claim at issue arises from federal law; (2) the defendant is not subject to any state's courts of general jurisdiction; and (3) invoking jurisdiction upholds due process (namely, that jurisdiction is not unreasonable). *Id.* (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)).

Test-Rite International concedes that the first two prongs are satisfied. *See* Opp. at 5–6. The relevant dispute for purposes of this Motion is therefore the third prong. Under this requirement, "[t]he due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [defendant] and the forum state, we consider contacts with the nation as a whole." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).

Due process generally requires that a "defendant 'have certain minimum contacts' ... 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 602 (9th Cir. 2018) (quoting *Int'l Shoe Co. v. Washington*, 325 U.S. 310, 316 (1945)). Specifically, there must be (1) purposeful activities in the United States, showing that a defendant purposefully availed itself of the privileges of doing business in the United States, thus invoking the benefits and protections of its laws ("purposeful direction"); (2) the claim must arise out of activities that are related to the United States; and (3) the exercise of jurisdiction must comport with notions of fair play and substantial justice." *Lang Van*, 40 F.4th at 1041. The Court analyzes each of these requirements in turn.

      a. **Purposeful Direction**

In actions for trademark infringement, there must be "purposeful direction" tied to the defendant's conduct. The Court analyzes purposeful direction under a three-part "effects" test. *Calder v. Jones*, 465 U.S. 783, 789 (1984) (finding jurisdiction "proper in California based on the 'effects' of their Florida conduct in California") (citation omitted). This test is satisfied if Defendant (1) committed an intentional act; (2) expressly aimed at the forum state; and (3) caused harm that defendants knew was likely to be suffered in the forum state. *Id.*; *see Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

Purposeful direction requires an intentional act, which arises when the defendant has "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Here, Test-Rite International does not dispute that it performed an intentional act when it directed the manufacturing process and caused the accused product to be created in Taiwan, and then sold the sold the product to its California-based subsidiary Test-Right Products. *See* Reply at 4; Opp. at 6–7. Voluntarily manufacturing a product and selling it are enough to satisfy this first prong. *See Spy Optic, Inc. v. AreaTrend, LLC*, 843 F. App'x 66, 68 (9th Cir. 2021) ("AreaTrend concedes that it committed an intentional act by selling Spy Optic-branded products. So we start with the second prong….").

As to the last two requirements, Test-Rite International argues that neither is satisfied because it "simply sourced a product in Asia which is now accused of infringing a trademark in the United States." Motion at 14. Defendant also points out the well-recognized principle that the mere fact that a foreign supplier contracted with a California distributor "is not enough to establish personal jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty*, 582 U.S. 255, 257 (2017). "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 112 (1987).

The Court disagrees with Test-Rite International's characterization. Plaintiff has sufficiently alleged that Test-Rite International engaged in acts expressly aimed at the United States and caused harm it knew was likely to be suffered there. Q Industries alleges that Test-Rite International

engaged in willful infringement with knowledge of Q Industries' SPECIAL OPS trademark. TAC ¶¶ 10, 11, 19, 20, 23–29, 36, 38, 55, 59, 81, 84, 89. Evidence was proffered that supports the claim that Test-Rite International sought to copy Q Industries' products for the purpose of placing the Accused Product in O'Reilly stores, where Q Industries' products used to sit. *See id.*; *see also* Dkt. Nos. 161-5 at TR00002983–85, 161-7, 161-4, 161-6.[2] Evidence supports the inference that Test-Rite International had the Q Industries' air compressor patents in its possession, *see* Dkt. No. 161-5 at TR00002983, and the patents identify the inventor and Q Industries as both being located in the United States. Q Industries Patent [Dkt. No. 217-3].[3] Importantly, Mr. Cheng, a Test-Rite International employee, appears to have been heavily involved in creating and selling the Accused Product to Test-Right Products and O'Reilly in the United States. *See* Dkt. No. 161-3 at 63:20–64:3, *see also* Dkt. Nos. 161-7, 161-4, 161-6, 161-5. Mr. Cheng took responsibility for Test-Rite International's examination for patent infringement. Dkt. No. 161-3 at 74:5–18. And Test-Rite International had notice that it would be subject to suit for infringement in the United States if it did not avoid infringing Q Industries' patents. *Quiksilver, Inc. v. Quick Sports Int'l B.V.*, No. SACV031548DOCANX, 2005 WL 8157305, at *3 (C.D. Cal. May 11, 2005) (by developing a plan to market goods under a trademark in the United States, defendants had "clear notice that they could be subject to suit for trademark infringement in the United States"). In short, the stream of commerce defense is inapposite here because Plaintiffs have sufficiently pled that Test-Rite International specifically targeted the United States when it knowingly sold the Accused Product to a U.S. subsidiary (Test-Rite Products) for its U.S.-based customer (O'Reilly) for distribution and sale of the Accused Product throughout the United States. TAC at ¶¶ 10, 11, 19, 23–29, 36.

In response, Test-Rite International argues that just because a product *might* end up in a forum state does not mean that it can be subject to the jurisdiction wherever that product ends up. *See* Motion at 14–16. But Plaintiff has sufficiently pled that Test-Rite International **targeted** O'Reilly's U.S. business when it submitted a bid to make the Accused Product for O'Reilly,

---

[2] *See* Declaration of Brent H. Blakely [Dkt. No. 161]. As applied *infra*.

[3] *See* Declaration of Tara A. Currie [Dkt. No. 217-1]. As applied *infra*.

6

benefitting directly when it was awarded that bid: "Roger, [w]ell congratulations [Test-Rite] has been awarded this compressor business." Dkt. No. 161-4 at TR00011990; *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) ("[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment."). Documents produced by Test-Rite Products include Test-Rite International Products' own internal documents, which support that it sold the Accused Product to "buyer" Test-Rite Products, and "customer" O'Reilly. *See* Dkt. No. 217-5. These purchase orders demonstrate that the Accused Products were shipped by Test-Rite International from China to Test-Rite Products' offices in Ontario, California and Flowery Branch, Georgia. *Id.*

In summary, it is reasonable to conclude for pleading purposes that Test-Rite International had knowledge that the Accused Products were going to Test-Rite Products (its California-based subsidiary), and then to the end customer, O'Reilly (a US-based company), for distribution throughout the United States. *Cf. Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 926 (2011) (noting that the stream of commerce metaphor has often been invoked in products liability cases where the product travels through "extensive chain of distribution before reaching the ultimate consumer."). Test-Rite International was not "agnostic as to where the products were actually sold." Reply at 7. Enough evidence was proffered to support that Test-Rite International engaged in "individual targeting," and expressly aimed its conduct at the United States such that the purposeful direction requirement is satisfied.

       **b.  Arising Out of Activities Related to the United States**

Because Test-Rite International's conduct was purposefully directed toward the United States, the Court examines next whether Plaintiff's claims arise out of or result from Test-Rite International's United States-related activities. Test-Rite International make the same argument under this required element —namely, that Plaintiff's claims cannot arise out of or relate to Test-Rite International's United States-related activities because they "do not arise out of [its] non-existent forum-related activities." Motion at 17.

The Court disagrees for the same reasons articulated above. Test-Rite International's conduct related to the manufacturing of goods to replace goods produced by Q Industries for

O'Reilly connect Test-Rite International to the United States. Thus, Plaintiff's claims arise out of and result from Test-Rite International's United States-related activities.

### c. Reasonableness

"[O]nce the plaintiff has satisfied the first two prongs, the burden then shifts to the defendant who must show that jurisdiction would be unreasonable." *Lang Van, Inc*, 40 F.4th at 1039 (citation omitted). Test-Rite International must satisfy the burden of presenting a "'compelling case' that the exercise of jurisdiction would not be unreasonable." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–78 (1985)). To make this determination, the Ninth Circuit employs a seven-factor balancing test that weighs:

1. the extent of the defendant's purposeful interjection into the forum state's affairs;
2. the burden on the defendant of defending in the forum;
3. the extent of conflict with the sovereignty of the defendant's state;
4. the forum state's interest in adjudicating the dispute;
5. the most efficient judicial resolution of the controversy;
6. the importance of the forum to the plaintiff's interest in convenient and effective relief; and
7. the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018) (citation omitted). Test-Rite International fails to meet its burden.

The Ninth Circuit has held that the first factor, purposeful interjection, is analogous to the purposeful direction factor. *See, e.g., Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 984 (9th Cir. 2021); *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). "Ninth Circuit cases give the 'purposeful interjectment' factor no weight once it is shown that the defendant purposefully directed its activities to the forum state." *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir. 1987). Since the Court found that Test-Rite International purposefully directed its activities into the United States, this factor is given "no weight."

Test-Rite International argues (regarding the second factor) that it would be overly

burdensome to defend this action in this District, arguing that it "is a Taiwanese company with no offices in California," "most of their key employees and officers reside in Taiwan," "and "any corporate witnesses reside in Taiwan." Motion at 18. The Court acknowledges that defending this action will create an inconvenience but that after "minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co.*, 480 U.S. at 114 (1987). Further, much of the burden of defending itself will be ameliorated through its retained counsel Lewis Roca, located in Glendale, California, who is also counsel for Test-Rite Products.

Test-Rite International claims (regarding the third factor) that litigation "would conflict with the sovereignty of Taiwan to exercise jurisdiction in this case." Motion at 18. But given that the claims here deal with U.S. trademark law and related California state and common law claims that have nothing to do with the laws of Taiwan, it is unlikely that the action will conflict with Taiwan. *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th at 984 (finding that "the resolution of Ayla's claims will unlikely undermine Australian sovereignty" since "Ayla seeks only the determination and enforcement of its rights under United States trademark law and California unfair competition law and challenges Alya Skin's sales only in the United States").

Next, Test-Rite International argues (as to the fourth factor) that "Taiwan has a strong interest in adjudicating cases involving its own corporations, especially a publicly traded company of Taiwan." Motion at 14. This misses the mark since what matters is the interests of the United States. The Court finds that this factor weighs in favor of jurisdiction because "[t]he United States … has a clear interest in protecting its consumers from confusion and providing redress for violations of its trademark laws." *Ayla, LLC*, 11 F.4th at 984.

Test-Rite International contends (vis-à-vis the fifth factor) that "while it generally is more efficient to address all claims in a single case, it is not more efficient to add a new party at this near end stage of the litigation." Motion at 18. However, as discussed in Plaintiff's recent Motion to Amend [Dkt. No. 137], Plaintiff moved promptly upon receiving information relating to Test-Rite International's involvement to the infringement.

Next, Test-Rite International claims (as to the sixth factor) that "[P]laintiff has not shown

that they would be unable to obtain effect relief in a court in Taiwan." Motion at 18–19. As stated previously, however, the United States has an interest in adjudicating this dispute in the United States, and forcing Plaintiff to litigate in two separate countries is not an efficient judicial resolution of the controversy, especially when O'Reilly is also a U.S. defendant.

And finally, Test-Rite International argues that "any claims . . . can be properly brought in Taiwan." Motion at 19. The Court cannot be certain of this, as this case involves a trademark registered with the USPTO. "Though the burden on [Test-Rite International] of litigating this case under a forum dispute resolution system may be relatively high, it does not outweigh [Q Industries'] interest in adjudicating its trademark dispute in the United States." *Ayla, LLC*, 11 F.4th at 985.

## V. CONCLUSION

For the foregoing reasons, the Court finds that Test-Rite International is subject to specific personal jurisdiction in the United States under Federal Rule of Civil Procedure 4(k)(2). Defendant's Motion is denied.

Dated: January 26, 2024

_____
Hernán D. Vera
United States District Judge